Baldwin v. Dalton.

---

BALDWIN et al., Appellants, v. DALTON, Administrator, etc., et al.

### Division Two, March 28, 1902.

1. **Equitable Procedure:** LEGAL REMEDY: BAR. The jurisdiction of a court of equity to set aside a judgment for fraud is not ousted because a remedy at law exists, unless the statute giving the remedy at law positively and directly prohibits the exercise of jurisdiction by a court of equity.

2. **Judgment:** FRAUD: COLLUSION BETWEEN JUDGE AND ADMINISTRATOR. The facts of this case reviewed in connection with those recited in the opinion on a former appeal (139 Mo. 118), and it is held that they do not show collusion between the administrator and the probate court to secure approval of the final settlement without proper notice or by otherwise practicing deception on the distributees.

3. **Sale of Lands to Administrator:** EJECTMENT. If the sale of lands by the administrator is void, then the remedy of the heirs is ejectment.

4. ———: STATUTE OF 1865: TRUSTEE AS TO PROFITS. The purchase by the administrator of lands belonging to the estate, in accordance with the statute of 1865, which remained in force till November, 1879, for three-fourths of the appraised value or more, if done in pursuance to an order of court and by it approved, does not render him a trustee for the heirs, in the absence of proof of unfair advantage having been taken by him. Such sales being valid, he is not chargeable with whatever profit he made by a resale of the lands.

5. ———: ———: SALE TO ADMINISTRATOR'S ATTORNEY: VALIDITY. If a sale of lands to an administrator was valid under the statute, so also was a sale to his attorney.

Baldwin v. Dalton.

6. ———: TAKING ADVANTAGE OF POSITION: TRUSTEE AS TO PROFITS: ACQUIESCENCE: DOUBTFUL TITLE. Where the administrator paid cash for the lands of the estate, and bought them at their appraised value, and they are not shown to have been worth more, and the sale and deed were made directly to him and spread upon the public records, and there is no evidence of any agreement between him and his purchaser to sell the lands before he bought, the charge of fraud, or having taken unfair advantage of the heirs, will not be sustained by the single fact that sometime afterwards he sold them for three or four times as much as they cost him. Certainly this should be the finding if the purchase was open to scrutiny for thirteen years and not called in question at any of his annual settlements, and the title to the lands was in doubt. And no fraud or unfair advantage being shown, he is not chargeable as trustee for the heirs for the profits of the transaction.

7. ———: ———: PROXIMITY OF SALE. A sale by the administrator three years after purchase by him of lands of the estate, is no such proximity of sale as to raise any presumption that he knew at the time of his purchase that he could sell the land at the advance in price which he obtained.

8. Setting Aside Final Settlement: FRAUD: ILLEGAL ALLOWANCES. Mere illegal allowances, or omissions of proper debits in the accounts presented for final settlement, is not sufficient to set aside the final settlement as being fraudulent.

9. ———: ———: DOCKETING CASE AND FILING SETTLEMENT. No suspicion of fraud is to be attached to the fact that a case is docketed in the probate court for the second day of the term and the final settlement is not filed till the fourth day, especially if the evidence shows that the administrator was busy in another court during the same week.

Appeal from Butler Circuit Court.—*Hon. J. L. Fort,* Judge.

AFFIRMED.

*E. R. Lentz* and *W. R. Edgar* for appellants.

(1) The attorney for plaintiffs informed the probate judge that he desired to contest the settlement of Davidson prior to the filing thereof, and was informed by said judge that,

when the settlement was filed, if it was fair on its face, he would approve it, and the heirs could appeal from his judgment. It showed a determination on his part to approve it, whether right or wrong in fact, and although it may have been burdened with fraudulent debits and credits. He not only advised plaintiffs' attorney of his purpose to approve the settlement, but carried out his predetermination to the letter, and gave them no opportunity to be heard with respect to the settlement as a whole, or any part or parcel thereof. This was not only a fraud upon plaintiffs, but an absolute denial of justice, and showed conclusively that the approval of the settlement was procured by reason of a fraudulent and collusive arrangement between Davidson and the judge of the probate court. A judgment thus obtained will be set aside at the instance of heirs of the administrator's intestate. Baldwin v. Davidson, 139 Mo. 125; Mayberry v. McClurg, 51 Mo. 256; Miles v. Jones, 28 Mo. 87; Harris v. Terrell's Admr., 38 Mo. 421; Smith v. Sims, 77 Mo. 269. (2) Davidson was administrator of the estate of J. W. Baldwin, deceased; he was, therefore, a trustee for the heirs and others interested in the estate; and being a trustee, he was prohibited by the policy of the law from purchasing the trust property, or any part of it, on his own account. Houts v. Shepherd, 79 Mo. 144; Merritt v. Merritt, 62 Mo. 156; Landis v. Saxton, 89 Mo. 375; Harney v. Donohoe, 97 Mo. 144; Cruce v. Cruce, 81 Mo. 683; Bent v. Priest, 86 Mo. 482; Thornton v. Irwin, 43 Mo. 162; Hull v. Voorhis, 45 Mo. 558; Grumley v. Webb, 44 Mo. 451; Shaw v. Shaw, 86 Mo. 597; Lass v. Sternberg, 50 Mo. 126; State ex rel. v. Jones, 131 Mo. 209; Michaud v. Girod, 4 How. (U. S.) 556; Fox v. Macreth, 2 Brown Ch. 400; Davoue v. Fanning, 2 Johns. Ch. 252; Hill on Trustees (3 Am. Ed.), side pp. 159-60; Story's Eq. Jur. (10 Ed.), sec. 322; Perry on Trusts (2 Ed.), sec. 205. (3) Defendant Davidson purchased from himself at private sale at one time four hundred and eighty acres, and at another six hundred and forty acres of the lands

belonging to the estate of which he was the administrator, and of which lands he had the selling. He sold these lands shortly after that, in 1877 and 1881, at which sale he realized a profit of $3,200. This profit belonged to the estate. Davidson has not accounted to the estate for any part of it. The trial court greatly erred in refusing to restate the accounts of said Davidson as such administrator, or to charge him with the amount of profit so realized from said resale, together with interest thereon. Clyce v. Anderson, 49 Mo. 43; State ex rel. v. Jones, 131 Mo. 209; Rea v. Copelin, 47 Mo. 82; Grumley v. Webb, 44 Mo. 451; Lass v. Sternberg, 50 Mo. 125; Ownby v. Ely, 58 Mo. 478; Merritt v. Merritt, 62 Mo. 155; Houts v. Shepherd, 79 Mo. 144; Shaw v. Shaw, 86 Mo. 597; Landis v. Saxton, 89 Mo. 381; Patterson v. Booth, 103 Mo. 413; Perry on Trusts (2 Ed.), sec. 429; Hill on Trustees (3 Am. Ed.), side page 160. (4) Defendant Davidson was the attorney and legal adviser of Fleming, the former administrator of this estate, during all the time that he acted as such administrator. During the continuance of the relation of attorney and client between himself and said W. B. Fleming, he purchased from his client, the administrator, four hundred and eighty acres of lands, belonging to said estate, and thereafter, during the continuance of the administration, sold the same and realized from the resale a profit of $1,920. This profit belonged to the estate, but Davidson failed to account for it. Davidson was under the same disability to purchase the lands belonging to the estate, when he was acting as attorney for the administrator, as when he was acting as administrator. The trial court committed error in refusing to restate Davidson's accounts and to charge him with the amount of profits realized from such resale. Woerner's American Law of Administration, sec. 487; Hull v. Voorhis, 45 Mo. 558; Thornton v. Irwin, 43 Mo. 163; Grayson v. Weddle, 63 Mo. 539; Eoff v. Irvine, 108 Mo. 378; Life Ins. Co. v. Smith, 117 Mo. 261; Davoue v. Fanning, 2 Johns. Ch. 264; Howell v. Baker, 4 Johns. Ch. 120;

Van Epps v. Van Epps, 9 Paige, Ch. 241; Hill on Trustees (3 Am. Ed.), side page 160. (5) Persons standing in fiduciary relations will not be permitted to make any profit from their dealings with the trust property. Hill on Trustees (3 Am. Ed.), side page 160; 1 Story's Eq. Jur., 470-1; Michaud v. Girod, 4 How. (U. S.) 556; Davoue v. Fanning, 2 Johns. Ch. 252-6; Fox v. Macreth, 2 Browns, Ch. 400; Bent v. Priest, 86 Mo. 482. (6) An administrator having purchased at his own sale is treated in equity as a trustee for the heirs and devisees. Woerner's American Law of Adm'n, sec. 487; Story's Eq. Jur., p. 328; Miles v. Wheeler, 43 Ill. 123; Ebbelmesser v. Ebbelmesser, 99 Ill. 541; O'Connor v. Flynn, 57 Cal.; Michaud v. Girod, 4 How. (U. S.) 556; Maberry v. Dollarhide, 98 Mo. 201.

*Wilson Cramer* for respondents.

(1) In his settlements, Davidson, the administrator *de bonis non*, has charged himself with all of the assets of the estate shown to have been received by him, with the possible exception of one small item of $10.55 for corn sold by him, and on the other hand has taken credit for some small sums as fees for making settlements, reports of sales, etc., to which, under the law, he was not entitled. These matters, however, afford no ground for setting aside the final settlement. Nelson v. Barnett, 123 Mo. 564; Lewis v. Williams, 54 Mo. 200; Sheets v. Kirtley, 62 Mo. 417; Miller v. Major, 67 Mo. 247. (2) The final settlement of an administrator can only be set aside in a court of equity for fraud in procuring the judgment of approval. Nelson v. Barnett, 123 Mo. 564; Moody v. Peyton, 135 Mo. 482; Smith v. Hauger, 150 Mo. 437; Covington v. Chamblin, 156 Mo. 574. (3) When the probate court allows a disbursement in an annual settlement, the allowance is prima facie evidence of the correctness of the account. Meyers v. Meyers, 98 Mo. 262; Clake v. Sinks, 144 Mo. 448; Ladd v.

Stephens, 147 Mo. 319.   (4) All the sales of real estate mentioned in the petition as having been made by Davidson as administrator to himself were made while the General Statutes of 1865 were in force, permitting administrators to buy at their own sales, and he paid the full appraised value.   G. S. 1865, p. 499, secs. 32 and 35; Grayson v. Weddle, 62 Mo. 539.

GANTT, J.—This is the second appeal in this case. The former appeal is reported in 139 Mo. 118.

The suit is in equity by the heirs of J. W. Baldwin to set aside the final settlement of Isaac M. Davidson as administrator of J. W. Baldwin, deceased, made and approved at the May term, 1890, of the probate court of Butler county, for fraud, and to surcharge his accounts as such administrator. After the reversal of the cause a retrial was had, which resulted again in a judgment for defendants, from which plaintiffs again appeal.

When the cause was here on a former appeal, upon the facts then presented to this court, it was ruled that the mere fact that plaintiffs appealed from the judgment of the probate court and thereafter dismissed their appeal, did not bar a suit in equity to set aside the settlement for fraud.   In a word, the ancient jurisdiction of a court of equity to set aside a judgment for fraud is not ousted because a remedy at law exists, unless the statute giving the remedy at law, directly and positively prohibits the exercise of jurisdiction by the courts of equity.   [Stewart v. Caldwell, 54 Mo. 536; Baldwin v. Davidson, 139 Mo. 126.]   To that announcement we still adhere.

Upon the evidence adduced on the former trial we also ruled that the action of the probate judge in announcing to the attorney for the heirs, when he advised him that he desired to contest the settlement when it should be filed, that if it was fair on its face, he would approve it and the heirs could appeal, showed collusion between the administrator and the court, and constituted fraud, for which the judgment afterwards rendered

by the probate court should be set aside.   On the retrial the evidence as to the action of the probate judge in approving the settlement of Davidson as administrator *de bonis non* was practically the same as on the former appeal, save and except that E. R. Lentz, the attorney for the heirs, testified: "I don't think I had any conversation with Davidson at that time.    I don't remember to have said anything to Davidson about filing exceptions to his settlement."    And Davidson unequivocally denies that Lentz or any one else notified him that the heirs intended to file any exceptions to his settlement, and whatever may be said as to the conduct of the judge in not sending for Mr. Lentz when the settlement was presented, it is but simple justice in view of the evidence as it now appears, to state that it entirely fails to show that Davidson directly or remotely undertook to improperly influence the judgment of the probate court or was guilty of any fraud in procuring its approval of his final settlement.    Since the former appeal Mr. Davidson has died, and James L. Dalton has been appointed administrator *de bonis non* with the will annexed, of said Davidson. The circuit court on the retrial found as a matter of fact that there was no collusion between the probate judge and I. M. Davidson as to when said settlement should be filed or as to its examination and approval; that the same was filed and approved after due notice and that Davidson was not advised that any contest of his settlement would be made, and that plaintiffs were in no way misled by the remark of the probate judge, and that it was no part of the court's duty to send out and hunt up parties who had been legally notified that the settlement would be made at said term; that the settlement was duly made and approved.

The circuit court also heard the evidence of various transactions and settlements of said Davidson as administrator of said estate.    The specific charges in the bill and the evidence offered to substantiate the same will be noted in the consideration of each.

I. These facts appear in the record: Joseph W. Baldwin died in Butler county in 1873 and his widow Mrs. Elizabeth G. Baldwin administered on his estate. Her inventory and appraisement showed personal estate amounting to $2,544. A few months after she had taken charge of the estate she also died, without having made a settlement, and thereupon on July 14, 1873, Daniel Kitchen was appointed and qualified as her administrator, and on the same day William B. Fleming was appointed and qualified as administrator *de bonis non* of the estate of Joseph W. Baldwin.

In the bill it is charged that the administrator of Mrs. Baldwin made settlement with Fleming, the administrator of Baldwin, by which it appeared that there were notes on hand belonging to the estate of Baldwin to the amount of $1,095.21, and county warrants to the amount of $74.10 exclusive of interest, but by the additional abstract to which no exceptions have been filed in this court and under the statute must be accepted as correct, it further appears that on May 27, 1874, the same day said settlement was made, it was set aside by the probate court on the motion of Davidson, the attorney for Baldwin's estate, because prejudicial.

It further appears that in the lifetime of Joseph Baldwin, he had sold to A. R. Rice certain lands and executed a bond for title, and Rice had executed to him five notes, two for $150 each, two for $200 each and one for $250. Before the terms of the sale were complied with both Baldwin and Rice died, and at the August term, 1873, the probate court under the statute ordered the bond and notes to be cancelled, which was done without objection on the part of Rice's heirs.

On October 3, 1873, after the order of cancellation was made, Fleming, as administrator *de bonis non* of Baldwin's estate, gave David Kitchen as administrator of Mrs. Baldwin, his receipt for the Rice notes, amounting to $950, which were thus received and turned over to Rice's administrator, and in this way $950 of the alleged $1,087.20 was wiped out, and

also a receipt for other evidences of debt, amounting to $137.54.

These two sums go to make up the $1,087 which plaintiffs assert were turned over to Fleming as administrator of J. W. Baldwin's estate on the alleged settlement, but which as we have seen was set aside by the probate court the same day it purports to have been made.

While Fleming was administrator of Baldwin's estate he made two sales of real estate belonging to Baldwin, under orders of the probate court. He sold the northeast fractional quarter of section 10, township 24, range 6, to Andrew Gibbony for $100, April 20, 1874, and made report of this sale May 28, 1874, which was approved, and having died before he executed the deed, and the deceased defendant, I. M. Davidson, having been appointed administrator *de bonis non,* of Baldwin's estate, made the deed February 14, 1879. The other sale was of 480 acres to I. M. Davidson for $480 on March 24, 1874, which sale was also approved May 24, 1874, and as Davidson had become the administrator, the clerk of the court was ordered to make the deed, which he did on September 16, 1874. Davidson was appointed and qualified as administrator of Baldwin, July 10, 1874, and was also appointed administrator of Fleming, September 11, 1874.

On August 3, 1874, Davidson filed his inventory of Baldwin's estate, showing notes, receipts and open accounts belonging to said estate, to the amount of $429.55.

On November 27, 1874, as administrator of Fleming, he made a settlement with the probate court of Fleming's accounts as administrator *de bonis non* of Baldwin's estate, which showed, after disbursements and notes and accounts turned over to Davidson as successor, a balance due the estate of Fleming of $50. The correctness of that settlement is not before us for review, as it is a settlement of Fleming's estate, and not Baldwin's.

But counsel for plaintiffs assail two items in this settle-

ment on the ground that Davidson was the attorney of Fleming, and in some way should be held responsible for Fleming's administration, although it has never been attacked by the heirs. The two items are Davidson's note for $384, given for the land he purchased of Fleming as administrator, and Gibbony's note of $75. These were in Fleming's hands when he died and Davidson administered on his estate.

In making a settlement for Fleming of his accounts with Baldwin's estate Davidson charged himself with both of these notes and also with the cash payments made by Davidson and Gibbony to Fleming on the land purchases, and then credits him with the full amount of the Gibbony note, and $348.60 on account of Davidson's note. Davidson explained why he did not charge himself with this note, that at Fleming's death there was a judgment against Baldwin's estate for $646, which was a lien on the land, and he was advised by the probate court it ought to be paid and as he had been attorney for the estate from the inception and had agreed to attend to the legal business for $100 a year, with the approbation of the court, he deducted his fee and commission, and paid the balance on this judgment and on his transfer settlement he filed his receipt for $96 as attorney for Fleming, and the $384, making the $480. In this manner the $480 with which the heirs seek to charge him was fully paid and for this reason he did not charge himself therewith as administrator *de bonis non.* The receipt of Tubb, attorney for M. H. Wright, who held the allowance, corroborates this statement of Davidson, so that it is not true that Davidson never paid for the land, but it was paid as explained by him.

As to Gibbony's note, it was never shown to have been in Davidson's possession or that Gibbony was solvent. The remaining balance, $137.54, charged to Fleming, was never in Davidson's hands, except the receipt for the Wesley Hines note of $24.29, and it is clear that in this settlement Davidson is

not chargeable as surety for Fleming.    That liability if any was on his bond, and no relief is sought from Fleming's estate.

Starting now with Davidson's administration of the estate, the great burden of the bill is his alleged maladministration of the real estate belonging to Baldwin's estate.    If the theory of the plaintiffs is that the sales of the land to the administrator were void, then ejectment was the proper action, but we construe plaintiffs' position to be that the administrator was a trustee and chargeable with whatever profit he made by the resale of these lands.

The lands were unimproved wild lands.    On April 1, 1876, Davidson bought 200 acres of these lands at private sale for $200 or one dollar per acre.    It was appraised at $100. The sale was regularly reported and approved by the probate court at the May term, 1876, and the clerk made him a deed under the order of the court.    In January, 1877, he bought 280 acres for $280.    This sale was reported and approved, and the deed made by the clerk August 21, 1877.    In February, 1878, he bought a section for $640 which was likewise approved and deed made by the clerk.    Another 160 acres was also bought by him, but as no charge of fraud is made as to this, the only question raised is whether he paid the purchase money, $160.    He also sold to Wm. C. Nickols lot 7, section 28, township 25, on March 1, 1877, for $75, receiving $15 cash, and Nickols note for $60.    Nickols having failed to pay, the probate court set aside the sale, and ordered it resold and Edward Linden bought it for $60.    While the attorney for plaintiffs charges that it was sold for $165, the report of sale shows it was sold for $60, and the deed so recites, and this sum paid the Nickols note for which Davidson never afterwards took credit.    Davidson charged himself in his settlements with the full amount of the purchase money for the lands he thus bought.    In his second settlement, $480; in his third, $640; and in his fourth, $160.

As already said, this suit is largely bottomed upon the

proposition that because Davidson was administrator of Baldwin's estate he was a trustee for the heirs and was prohibited by the policy of our laws from purchasing said lands or any part of it on his own account.    But this states the doctrine too broadly when we consider that under the General Statutes of Missouri of 1865, which continued to be the statute law on this point until November 1, 1879, it was provided by section 32, page 499: "No real estate sold for the payment of debts shall be sold at private sale for less than three-fourths of its appraised value, nor shall the executor or administrator, directly or indirectly, become the purchaser of such real estate at less than its appraised value," and by section 35 of the same chapter it was provided: "If such report be approved by the court, such sale shall be valid, and the executor or administrator, *or if he be the purchaser*, the clerk of the court, shall execute, acknowledge and deliver to the purchaser a deed," etc.

Now, whatever may be the general doctrine prohibiting a sale by an administrator to himself in the absence of such a statute as above quoted, we hold that a purchase by an administrator at his own sale, under order of the probate court and submitted by him to that court for approval and by it approved, does not, in the absence of proof of unfair advantage taken by the administrator, render him a trustee for the heirs prior to the repeal of the statute of 1865 in November, 1879.   No such construction has been put upon that statute by this court, but it was expressly held in Grayson v. Weddle, 63 Mo. 539, that an administrator might purchase at his own sale provided he paid the appraised value of the land.    It appears from this record that section 12, township 22, range 5, was appraised at fifty cents an acre for that tract.    In so far as the 480 acres bought by him from Fleming as administrator, no relation of trust was established, because if the administrator may buy at his own sale, certainly his attorney may.    None of the lands purchased by him were bought at less than full appraised value, and in some cases he paid double the appraisement.

The only meritorious complaint as to these sales is that in a short time after his purchase, Davidson sold these lands at a large profit.    This demands the closest scrutiny.

The first sale is that to A. Pollock & Company.    The lands conveyed in this transaction were 480 acres, the north half, and north half of southeast quarter, and east half of southwest quarter, of section 3, township 25, range 5, and 480 acres the north half, and the north half of southeast quarter, and the north half of the southwest quarter, of section 2, township 25, range 5, and 80 acres, the south half of the southeast quarter of section 34, township 23, range 5.    The first 480-acre tract was that which Davidson purchased of Fleming during the latter's administration in March, 1874.    The third piece, 80 acres, never belonged to Baldwin.    The other 480 acres consisted of 200 acres bought of himself in 1876 in April, and approved at the May term, 1876.    The 280 acres was bought of himself January 2, 1877, and approved at the February term, 1877.

These lands were conveyed by Davidson to Pollock and Lewis by deed April 28, 1881, for $5,200, or $4.82 per acre. The original trade was made August 28, 1877, and Davidson gave Pollock and Lewis a bond for title, and the payments were to be made in three installments, one-third in four months, one-third in one year, and one-third in two years.    It is, therefore, obvious that of these lands Davidson had owned 480 acres for more than three years by his purchase from Fleming before he sold to Pollock, and the 80 acres Baldwin never owned.    Certainly there is no such proximity in his resale to Pollock as to raise any suspicion that he had such resale in view when he bought this 480 acres, and there is not a word of evidence that these lands were reasonably worth more than one dollar an acre when he purchased.    Five hundred and sixty acres of these lands must upon this showing be excluded from further consideration.    This brings us, then, to the remaining charge as the 480 tract bought of himself.    As already

seen he had acquired 200 acres of this tract in April, 1876, some eighteen months prior to the sale to Pollock, and the other 280 acres January 2, 1877, over six months prior to said sale, and this last sale had been approved by the court more than a month before he had ever seen Pollock. Whatever adverse inference might have been drawn from this proximity is rebutted by the evidence of both Pollock and Davidson, which shows that it was impossible that Davidson had any understanding with Pollock to sell to him before he bought the lands. Davidson's purchases were for cash and his sale to Pollock was on two years' time. There being no proof that at the time he purchased, the lands were worth any more than he gave in the open market, and it appearing that this sale to himself was direct and spread upon the public records, and no circumstance of buying ostensibly through another, the charge of fraud stands upon the single circumstance that after his purchase he was fortunate enough to find a private purchaser on long time at an advance of four dollars an acre. When it is considered that the purchase by Davidson was open at all times to the scrutiny of the heirs and creditors of Baldwin, and was not called in question at any of his annual settlements and not until 1890, thirteen years after the transactions were had, and the fact that title to wild lands was in great doubt, a fact of which this court is fully advised, we do not think the charge can stand and the circuit court properly refused to hold Davidson's estate for the profit he made by the resale, and he should not be charged with the $3,840 claimed on this account in the bill.

Next in order is the B. F. Reynolds sale.

This sale is predicated on Davidson's purchase of section 12, township 22, range 5, in February, 1878, and for which he obtained his deed March 15, 1878. It appears that on July 15, 1881, nearly three years and a half later, Davidson sold this tract to B. F. Reynolds of Canada for $1,920, or at a profit of

two dollars per acre, less $224 interest on his money, a net profit of $1,056, and not $1,280 as charged in the bill. There is no such proximity in this resale as to raise any presumption that Davidson knew at the time of his purchase that he could resell the land at the advance which over three years later he obtained. Moreover, the evidence very clearly indicated that about the time of his sale to Reynolds these lands had appreciated in value on account of the demand for timber in which that county was so rich of which the outside world seems to have been ignorant prior to that time. The same considerations which forbid one holding the sale of the first 480-acre tract to Pollock as untainted with fraud and a consequent resulting trust, must govern as to this tract also, and that the administrator should not be charged with this item either.

We have already adverted to the purchase of another 160 acres of land for which plaintiffs claim the administrator did not account, but this is obviously unfounded as the administrator charges himself in his fourth annual settlement with $160, the amount of the sale on June 12, 1879, of parts of sections 35 and 36.

Thus of the aggregate claims of $6,008.65, after a consideration of each item constituting that total, we have seen that $5,978.10, were not chargeable to the administrator.

There yet remains two items of that claim amounting to $30.65. As to the amount received from W. E. Massey: In his ninth settlement he charges himself as follows: "Received from W. E. Massey and may have to return it again $20;" and in his eleventh settlement he charges himself with "$20 received from W. E. Massey," so that it would seem that he was well charged with this sum. As to the $10.55 item on sale bill, it appears that it was the price of twenty-eight shocks of corn, November 2, 1874. It is not at all strange that sixteen years later he could not recall the facts in regard to that item. His best recollection was that it was in rent and thinks it was settled in some of the notes charged, but could not state posi-

tively. But charging him with that sum, and recasting all of his annual settlements and eliminating therefrom all illegal and improper charges, the balance due on final settlement could only amount to $58.65, but we discover no intentional fraud in the administration and no disposition to overreach the estate.

We have not been unmindful of the charge that the administrator bought the Emerson, Crozat and Fleming claims and that this was improper. Certainly he can not profit by his trust, but when he only asks to be reimbursed for $343.86 paid on these claims, and plaintiffs' own evidence shows he paid Emerson $800 in land for his allowance, and $30 for Fleming's, and $10 or $20 for Crozat's claim, and these were all duly probated judgments, it is clear he was in no sense profiting by their purchase, but was expending his own money to wipe out the debts of the estate.

Now, if anything is settled law in this State it is that mere illegal allowances, or some omission of proper debits in the accounts presented for final settlement, are not sufficient to set aside a final settlement on a charge of fraud. [Nelson v. Barnett, 123 Mo. 564; Lewis v. Williams, 54 Mo. 200.] The fraud for which a final settlement will be set aside is exactly of the same character as that which is required to set aside any other final judgment of a court of competent jurisdiction, to-wit, fraud upon the court in procuring the final settlement, or judgment, not mere errors of judgment in the court upon the matters presented to it for its consideration and judgment. [Moody v. Peyton, 135 Mo. 482; Smith v. Hauger, 150 Mo. 437; Covington v. Chamblin, 156 Mo. 574.]

With these long-established principles in view, what should be done with this appeal of the heirs?

At their urgent request we have patiently gone through their charges and the various items of the settlements, and find that the plain provisions of the statute law in force when the sales of realty of which they complain, permitted, in express terms, an administrator to purchase at his own sales. We find

he paid the full appraised value and sometimes double the appraised value of the lands he bought. We find no evidence that these lands were reasonably worth any more than he bid for them and these sales were regularly reported and approved by the probate court. For thirteen years the heirs and creditors permitted him without objection to go on expending his moneys which he paid into the estate in liquidating its taxes and debts. We find the proofs absolutely exclude the presumption that he knew he could sell these lands at a considerable advance when he bought them. These charges constitute the great burden of the bill. We further find, upon a restatement of his settlements, enough irregular, but not fraudulent, items to change a balance found due him of $8.98, according to his final settlement which was approved, into a balance against him of $58.65, with a list of unpaid allowances amounting to several thousand dollars and no creditor complaining, and the heirs could not possibly be benefited by setting aside the settlement.

Moreover, while on the former appeal we construed the language of the probate judge as evidence of a collusion between him and the administrator, in view of the further evidence that though living in the same county seat and practicing in the same circuit and probate court in which the administrator was also a practitioner, and having full notice that the administrator intended to make final settlement at that term, the attorney for the heirs, never, at any time, according to his own evidence, notified the administrator that he desired to be present and make objections to his settlement, and the positive evidence of both the administrator and the probate judge that the judge did not notify the administrator that the attorney for the heirs desired to be present, we think the presumption of collusion is fully rebutted. Moreover, since an examination of the record discloses that all the exceptions to the accounts of the administrator are based upon matters which had long appeared of record, except a few inconsiderable credits in the

final settlement, we discover no good reason why these exceptions might not have been formulated and filed with the probate court even in the absence of the administrator. We attach no importance whatever to the fact that the settlement was docketed for the second day but was filed on the fourth day of the term, especially as the evidence shows Mr. Davidson was busy in the circuit court during that same week.

Upon the record we think the showing insufficient to establish fraud in the procurement of the settlement and the judgment of the circuit court should be and is affirmed.

All concur.