## CLARISSA E. GOODMAN et al., Appellants, v. JAMES E. GRIFFITH, Admr. of estate of EMILY BRALLEY, deceased, Respondent.

**St. Louis Court of Appeals.    Argued and Submitted February 7, 1911.    Opinion Filed February 21, 1911.**

1. **APPELLATE PRACTICE: Defective Abstract: Facts Assumed Against Appellant.**  Where it is difficult to determine from an abstract of the record what was in the record proper and what was in the bill of exceptions, it will be assumed, as against appellant, that matter incorporated in the abstract which, to become part of the record, should have been introduced in evidence was introduced:

2. ———: **Conclusiveness of Referee's Findings.**  While, in cases of involuntary reference, the appellate court may determine for itself the correctness of the conclusion reached by the referee and trial court, yet the action of the referee and trial court is always persuasive and will not be disturbed on slight grounds.

3. **EXECUTORS AND ADMINISTRATORS: Right of Administrator to Sue Estate: Effect on Compensation.**  An administrator may assume the attitude of a mere creditor against his decedent's estate, without forfeiting his office, and, where he presents a claim, the court must, as required by statute, appoint a suitable person to represent the estate; and the presentation of such a claim does not affect his compensation.

4. ———: **Administrator's Attorney: Right to Represent Administrator as Claimant: Effect on Compensation.**  An attorney employed by an administrator does not forfeit his right to compensation for services rendered, merely because he represents the administrator and his wife in presenting a claim in their favor against decedent's estate.

    *Held*, by NORTONI, J., dissenting, it is improper for the attorney representing an administrator to institute a suit against the estate for the administrator in his private capacity, and that he should stand aloof while such litigation is pending, and hence that an attorney representing an administrator who institutes such a suit should be denied compensation from the estate for his services to the administrator in his trust capacity.

5. **PAYMENT: Receipts: Evidence.**  A receipt is prima facie evidence of the payment therein recited and when uncontradicted is conclusive.

Goodman v. Griffith.

6. ———: ———: **Impeachment: Sufficiency of Evidence.** Evidence that a person whose name was signed to a receipt was never known to have had or used the amount mentioned in the receipt does not sustain the claim of non-payment of such amount.

7. **GIFTS: Right to Make: Sufficiency of Evidence.** The payee of a note has a right to make a gift of it to the maker, and, on a review of the evidence, it is *held*, the payee of a note, who was the stepfather of the maker, made a gift of it to the latter.

8. **EXECUTORS AND ADMINISTRATORS: Impeachment of Final Settlement: Collateral Attack: Remedies.** An objection to the final settlement of an administrator of his mother, which involves his acts as executor of his stepfather, based on his failure to account for his acts as executor of his stepfather, made by the heirs and legatees of the mother after the final settlement of the estate of the stepfather and after the death of the mother, cannot be entertained by the court, but the remedy of the heirs is to proceed under sections 70 and 74, Revised Statutes 1909, authorizing proceedings against executors and administrators to discover assets; or they could have resisted the final settlement of the stepfather's estate.

9. ———: ———: ———. Mere illegal allowances or omissions of proper debits do not justify the setting aside of a final settlement of an executor or administrator nor the opening up of matters passed on in approving the final settlement.

10. ———: ———: ———. A final settlement of an administration has the force of a final judgment and cannot be attacked collaterally, but can only be reached under charges of fraud by a direct proceeding.

11. ———: ———: **Parties.** The right to directly attack for fraud a final settlement of administration, or to call an administrator or executor to account, extends to any person in interest in the estate.

Appeal from Pike Circuit court.—*Hon. David H. Eby,* Judge.

AFFIRMED.

*Ball & Sparrow* for appellants.

(1) Objectors are not heirs or legatees of G. L. Bralley, deceased. R. S. 1899, sec. 4613, does not apply. (2) Respondent held in trust for the heir and legatees.

Byers v. Weeks, 105 Mo. App. 72. (3) Objectors not being legatees under the will of George L. Bralley and their interest coming through Emily Bralley, it was the duty of respondent to account for all money and property received by him—not material from whence it comes. The probate court possesses equity jurisdiction. 1 American Law of Administration, p. 340.

*J. D. Hostetter* and *J. E. Thompson* for respondent.

(1) Heirs and legatees cannot litigate an alleged indebtedness of an administrator to an estate, not inventoried and denied by him, under exceptions to his final settlement. No such summary proceeding is authorized by statute. The administrator is entitled to a jury trial and this cannot be had in such a proceeding. Wilson v. Ruthrauf, 82 Mo. App. 439. (2) The rule is firmly settled in this state that the final settlements of executors and administrators are in substance and effect final judgments and, as judgments of court of competent jurisdiction, cannot be attacked for fraud in collateral proceedings. State ex rel. v. Carroll, 101 Mo. App. 110; State ex rel. v. Gray, 106 Mo. 526; Smith v. Hager, 150 Mo. 437. Before the receipts could be attacked, the final settlement of the Dr. Bralley estate must be directly attacked and set aside. State ex rel. v. Stuart, 74 Mo. App. 182; s. c. 102 Mo. App. 26. (3) Receipts are prima facie evidence of their contents, and where their execution is admitted, as in this case, and no evidence of fraud or mistake and the receipts not attacked in any way, they are conclusive. Ireland v. Spickard, 95 Mo. App. 64; Riley v. Kershaw, 52 Mo. 224; Bigbee v. Combs, 64 Mo. 529; Carpenter v. Jamison, 6 Mo. App. 216. (4) The note transaction was complete and passed the title to respondent. Dr. Bralley clearly expressed his intention in his letter to give the note to respondent, delivered it

to respondent and parted with all dominion and control
over the note, the gift was complete and the transaction
as valid as though an actual sale and transfer of the
note to respondent had been made. Meyer v. Koehring,
129 Mo. 15; Banking Co. v. Miller, 190 Mo. 640.

REYNOLDS, P. J.—Guided solely by the amend-
ed abstract of the record of the proceedings in this
cause, filed by counsel for appellants, it is very difficult
to make an intelligible statement of exactly what is in-
cluded as record proper and what is covered by the bill
of exceptions: more than that, it is not quite clear how
much of what is in this amended abstract was either
in the record proper or even in evidence before the trial
court.

Counsel for respondents attacked the original ab-
stract, and again attack this amended one, filed by
leave of court, for various defects and omissions of
material matter.    They are doubtless correct on some
of their contentions but to put an end to the matter and
endeavor to arrive at the very right of the controversy,
we have concluded to ignore these objections.

Those counsel are in error, however, in contending
that there is no evidence furnished by the record entries
proper, showing that the bill of exceptions was filed
within due time.  The abstract, as amended, does show
this.

Counsel for respondent make the further point that
there is nothing in this abstract of the record to show
that the case was ever in the probate court of Pike
county and appealed from that court to the circuit court.
We do, however, find in the amended abstract, under the
captain of the title of this cause, what purported to
be of the record of the probate court of Pike county.
These entries show that final settlement of respondent,
as administrator of the estate of Emily Bralley, de-
ceased, was filed in the probate court on the 23d of No-

155 App.—37

vember, 1908; that exceptions were filed to it in that
court on the 10th of December; that final judgment was
rendered on it by the probate court on the 14th of
January, 1909, and an appeal taken to the circuit court
January 21st, "and cause certified to the circuit court
of Pike county, Missouri." Then follow the record
entries in the cause which appear in the circuit court.
It is true that it does not appear in the same connection
what that final settlement was. But the abstract com-
mences by setting out what purports to be the final
settlement of respondent, as administrator of the estate
of Emily Bralley, deceased, and the objection to that,
and we gather enough from the record to be reasonably
sure that it is the settlement and objections to it that
were before the probate court and before the circuit
court on appeal from the probate court.

Counsel for appellant have also incorporated in
their amended abstract certain entries as record en-
tries of the probate court of Pike county in the matter
of the estate of George L. Bralley, deceased, these per-
taining particularly to the filing, on the 12th of Feb-
ruary, 1906, in that court of the final settlement of
James E. Griffith, as executor. By this it appears that
publication having been duly made, the matter of his
final settlement was heard, the executor having filed in
that court his accounts and vouchers, and that court
"having seen, heard and examined said accounts and
being fully advised in the premises, finds that the assets
of said estate have been fully administered and that
there remains no funds in the hands of said executor
and belonging to said estate, and said settlement is by
the court approved and said executor discharged."
Along with this is a copy of the last will and testament
of George L. Bralley, by which after making certain
bequests of one dollar each to his sisters and their heirs,
and a specific legacy of a gold watch and chain to a
party named, the testator leaves all the rest, residue and
remainder of his estate to his wife, Emily Bralley, and

appoints James E. Griffith as executor. As appellants have inserted this matter in their abstract, we may assume, as against them, that it was in evidence at the trial.

It further appears by the testimony in the case that Mrs. Bralley was the mother of respondent, James E. Griffith, a child by a marriage prior to her marriage to George L. Bralley. George L. Bralley, hereafter referred to as Dr. Bralley, it appears, died on the 5th of April, 1903, and his wife, Mrs. Emily Bralley, died on the 25th of November, 1905. Mr. James E. Griffith appears to have been duly appointed as administrator of her estate. Mrs. Bralley was dead at the time respondent made final settlement as executor of the estate of Dr. Bralley. It further appears that when respondent filed his final settlement as administrator of the estate of Emily Bralley, in the probate court of Pike county, appellants, styling themselves the heirs of the estate of Mrs. Emily Bralley, filed objections and exceptions to the settlement. These are the settlement and objections heretofore referred to and it is on them that the case is now before us. After objecting to various credits claimed by the administrator, among others items of sixty dollars allowed Messrs. Tapley & Fitzgerald, as attorneys in a certain partition suit and one hundred dollars allowed to J. E. Thompson, Esq., as an attorney's fee for services rendered the administrator in connection with the estate, the principal objection, numbered 8, which was made, is as follows:

"Eighth. Your objectors and executors (exceptors?) say that James E. Griffith, administrator of the estate of Emily Bralley, deceased, has not charged himself with property that belonged to the estate, and they say that at the time of the death of George L. Bralley he was indebted to said George L. Bralley, evidenced by a note, the exact amount your objectors and exceptors cannot name, but have reason to believe and do believe, and charge the fact to be that it is something over

three thousand dollars; that same has not been accounted for in the George L. Bralley estate nor the Emily Bralley estate, and that upon the death of George L. Bralley said note became the property of Emily Bralley, now deceased.

"Your objectors and exceptors further charge the fact to be that said James E. Griffith, as executor of the estate of George L. Bralley, deceased, in his first annual settlement claims to have paid to Emily Bralley, deceased, the sum of $1629.14, and has her receipt therefor, and that in his second annual settlement he claims to have paid said Emily Bralley the sum of $1158.10, the two items aggregating $2787.24; that said administrator has not charged himself with, but that said money passed into his hands."

We are not advised by the abstract as to how many or which, if any, of these objections were overruled in the probate court. On appeal to the circuit court, the cause there coming on to be heard on these objections and exceptions, the court, on its own motion referred the whole matter to a referee, on the ground that it involved an examination of a long account. The referee was directed to hear and take the testimony and report it, with his conclusions to the court. The testimony was taken before the referee, who made his report, not sustaining the eighth objection as above, but disallowing the items covering the disbursements by the attorneys, above referred to. It is not important to note his action on other items. On this report of the referee being filed in court, exceptions were filed to it by both parties, heard, considered, and defendants' objection overruled to the disallowance of the $60 to Messrs. Tapley & Fitzgerald, but sustained as to the disallowance of $100 to Mr. Thompson and as to certain taxes, and were overruled as to plaintiffs' eighth objection, as well as to other miner objections. Whereupon appellants, objectors below, filed their motion for a new trial

in due time and that being overruled and exceptions saved, duly perfected their appeal to this court.

While in a case of this kind, involuntary reference, we have the right and power, as in cases in equity, to determine for ourselves the correctness of the conclusion arrived at by the referee and by the court, we have held in several cases, following the decision of our Supreme Court, that the action of the referee and of the trial court is always persuasive and will not be lightly disturbed. [See Reifschneider v. Beck, 148 Mo. App. 725, 129 S. W. 232.] We see no reason to depart from that rule in this case. More especially is that so, as we have arrived at the conclusion that this eighth objection, which is the material one in the case, and the one around which the controversy turns, should not have been entertained. This not only on consideration of facts connected with it, but as a matter of law.

Before entering upon a consideration of the eighth objection, however, it is as well to say now that we have considered the objection which was specifically made to the allowance of a credit to the administrator for a disbursement made by him to Mr. Thompson for legal services in advising the administrator in the matters of his administration, and consider it to have been properly overruled by the trial court. The objection seems to be based on the idea that Mr. Thompson, representing Mr. Griffith and his wife in presenting a claim in the probate court against the estate, he assumed an antagonistic position toward the estate and thereby debarred himself from further employment and forfeited all claim to compensation for services in advising the administrator, and that therefore the administrator should not be allowed credit for the amount paid him. The law recognizes that an administrator may assume the attitude of a mere creditor against the estate without forfeiting his office or right to compensation. It provides for the appointment by the court of "some suitable person to appear and manage the defense." The

estate is presumptively well cared for by such suitable person and the counsel he may select to represent him. It recognizes the individual claim as a matter separate and apart from the general administration, to be handled specially by another. But it does not recognize the presentation of the claim as a matter sufficient to disqualify the administrator in proceeding with the administration, nor does its presentation affect his compensation. We see no reason why it should be otherwise with counsel for the administrator. His employment to advise the administator in the administration of the estate does not extend to representing the administrator *pro hac vice*. The latter may employ his own attorney, if one is necessary. If the presentation of the claim by the administrator is, as the statute assumes, consistent with his continuance as administrator generally, surely the position of his counsel in representing him as to that claim is no less consistent, and no breach of professional propriety on the part of that counsel, who certainly occupies no higher fiduciary relation toward the estate than does the administrator who employed him. While the attorney may himself present his claim for allowance as against the estate (Nichols v. Reyburn, 55 Mo. App. 1), here the allowance is to the administrator for the disbursement. That allowance is proper.

This brings us to the consideration of the eighth objection. That objection goes to two transactions, as will be noted: first, an effort to charge this administrator with a note given by him to Dr. Bralley; second, to disallow him a credit for two sums, aggregating $2787.24, claimed to have been paid by him to Mrs. Bralley. The respondent introduced in evidence two receipts by Mrs. Bralley, one dated August 1, 1905, acknowledging the receipt from Mr. Griffith, as executor, of the sum of $1158.10; the other for $1629.14, dated May 14, 1904. The last, signed by Mrs. Bralley, as legatee under the will of George L. Bralley, deceased.

These receipts, it appears, were filed by respondent as executor of the estate of George L. Bralley, deceased. It is claimed by the appellants that this money was never paid Mrs. Bralley. They attempt to sustain this by evidence tending to prove that Mrs. Bralley was never known to have ever had or used any such sum. The evidence does not sustain the claim. The receipts were strong evidence, prima facie evidence certainly, that the money had been paid to her (Ireland v. Spickard, 95 Mo. App. 53, 1. c. 64, 68 S. W. 748), and uncontradicted, are conclusive. There was no evidence in this case which even tended to overthrow them.

As to the note, it appears very clearly that it was not for $3000 but for $2525, executed by Mr. Griffith to the order of George L. Bralley, dated April 6, 1896, payable one day after date, with interest from date at the rate of 8 per cent per annum, to be compounded annually; that there was indorsed on the back of the note a credit for $633.64, that credit being January 24, 1899, and "paying interest to that date and reducing the principal to $2500." There was also introduced in evidence a letter from George L. Bralley to Mr. Griffith, his stepson, the respondent here, which letter is as follows: "Enclosed please find your note which make to you a present. It may figure in your favor later. Yours sincerely, G. L. Bralley. I want to see you when you come down." Along with the letter was introduced the envelope in which it was claimed it was contained, which is postmarked Louisiana, Mo., July 9th, 10:30 a. m., 1902, and is addressed to James E. Griffith, Bowling Green, Mo., and is stamped with the name of the Mercantile Bank of Louisiana, Mo. The letter is on the letterhead of that bank but is undated and across the face of the note, as appears by the testimony in the case, is written the word "Paid." Nothing in the way of substantial testimony contradicts the fact that Dr. Bralley returned this note to Mr. Griffith as paid. He did it, apparently as a gift, as he had a right to do.

These matters which we have above stated, however, we state merely by way of showing that so far as appears by the testimony in the case, there is no substantial foundation for either of the charges made in this eighth objection in connection with this $2500 note or these payments to Mrs. Bralley.

The error of law, however, in entertaining or even considering this eighth objection at all lies in this: This eighth objection is made to the final settlement of Mr. Griffith, as administrator of the estate of his mother, Mrs. Bralley. All the transactions involved in this eighth objection, when examined, go to his acts as executor in the estate of Dr. Bralley. He is here charged to have failed to account for matters involved in his administration of the estate of his stepfather, George L. Bralley. But, as admitted, Mr. Griffith made final settlement of that estate in 1906; his final settlement was approved and he was then duly discharged. It is true that this was after the death of his mother, Mrs. Bralley. That, however, is immaterial in this case. It appears that the objectors were heirs of Mrs. Bralley and apparently legatees under her will, although this latter is not clear, for her will, if she made one, is not in evidence. They were parties in interest in her estate. On her death and between that and while the administration of Mrs. Bralley's estate was still open and unsettled, they could have proceeded against the executor under what are now sections 70, 71, 72, 73 and 74, R. S. 1909, formerly sections 74 to 78 of our statutes of 1899. These sections have been the law of our state for many years in their present shape, save that by Act of June 14, 1909 (Laws 1909, p. 93), what was section 78 of the statutes of 1899 (now section 74), was amended by adding certain words to it not now pertinent. These sections have been very thoroughly considered by this court, Judge GOODE delivering the opinion, in In re Estate of Huffman, 132 Mo. App. 44, 111 S. W. 848, where the course of de-

cisions on these and kindred laws is fully reviewed. These sections and particularly section 74, distinctly provide that the proceedings under them may be instituted, on the affidavit of any party interested, against the executor or administrator. Hence these appellants, as the heirs of Mrs. Bralley, she not having instituted the proceedings during her lifetime, had the means at hand and the right in law, to bring Mr. Griffith into court as executor of George L. Bralley's estate and make him account for this $2500 note, if it was a fact that he owed it to the estate.

Moreover, in addition to the proceeding under these sections, it was open to these appellants, or objectors, to have resisted the approval of the final settlement of Dr. Bralley's estate, and to have attacked the final settlement which Mr. Griffith had made as executor of that estate, as for a fraudulent administration, or for *devastavit*. The payments to Mrs. Bralley which are assailed were made and allowed as disbursements in the settlement of Dr. Bralley's estate and covered by the final settlement; so, too, it nowhere appeared in Mr. Griffith's settlements that he had charged himself with the $2500 note. These matters, if assailable at all, can only be assailed by direct attack on the order of approval and discharge which was entered by the probate court on that final settlement. [Williams, Admr., v. Heirs of Petticrew, 62 Mo. 460, l. c. 467.] If they were illegal only, mere illegal allowances or even omissions of proper debits are not sufficient to set aside a final settlement, or open up matters necessarily passed on in arriving at and approving the final settlement. [Baldwin v. Dalton, 168 Mo. 20, l. c. 35, 67 S. W. 599; In re Estate of Judy, 166 Mo. 13, l. c. 19, 65 S. W. 993.]

It is settled by such a long and consistent line of decisions in our state, commencing with Caldwell v. Lockridge, 9 Mo. 358, decided in 1845, and adhered to down to the latest case of which we have knowl-

edge, May v. May, 189 Mo. 485, 1. c. 501, 88 S. W. 75, decided in 1905, that a final settlement of an administration has the force and effect of a final judgment and cannot be attacked collaterally, that it would be a work of supererogation to attempt to compile authorities on this proposition. It is elemental in our state, for that matter throughout all the American courts, so far as we are aware, that a final settlement can only be reached, under charges of fraud, by a direct proceeding. This right of attack as well as the right to call the executor or administrator to account, pertains to any person in interest in the estate. Hence the fact that Mrs. Emily Bralley was dead when final settlement was made by Mr. Griffith of her former husband's estate, in no manner whatever affects the consideration of this question. That right of attack was as open to these objectors then as it would have been to Mrs. Bralley, if she had herself been living at the time, they being interested as her heirs in that estate. They have not seen fit to do this, but now virtually attempt, by this collateral attack, to open up the administration of the estate of Dr. Bralley.

Without going into this case any further, it is sufficient to say that the action of the circuit court on the objections made to this settlement, both as to the items approved and to those disapproved, should be and is affirmed. *Judge Caulfield* concurs in full; *Judge Nortoni* expresses his views in a separate opinion.

### DISSENTING OPINION.

NORTONI, J.—I do not concur in so much of the opinion as declares it proper for the attorney representing the administrator in the course of administering the estate to institute a suit against the estate for the administrator and that such attorney in no manner represents the estate. My understanding of the law is to the contrary of this proposition. The statutes provide that if an administrator presents a demand against

the estate in his charge he is to step aside for the interim and the probate court shall appoint an administrator *pendente lite* to defend for the estate. That was properly done in this case but the attorney who represented the estate and the administrator throughout the course of administration instituted the suit against the estate for the administrator. In my opinion the just principle reflected in the statute as to the administrator standing aside requires the attorney of the estate to do likewise if the circumstances are such that he may not represent the estate in the litigation which ensues from the filing of the claim against it by the regular administrator. It may be the attorney who had formerly represented the estate and the administrator would not be the proper person to defend the estate when a claim was filed against it by the administrator, but at least he should stand aside and not assume a position to employ information which came to him in a confidential capacity while representing the estate in the suit of the administrator against it. The statute, section 101, Revised Statutes 1909, lays upon the administrator the duty of defending the estate in suits institued against it and of course authorizes him to employ counsel to advise and represent him about the administration, who may be compensated out of the estate. It has been expressly decided that counsel so employed by the administrator represent the estate and are to be compensated by it. [Nichols v. Reyburn, 55 Mo. App. 1; Gamble v. Gibson, 59 Mo. 585.] Though the attorney may represent the administrator as well while he is acting for the estate, no one can doubt that he is the attorney of and for the estate, for the decisions above cited are directly in point on the principle. This being true, he should stand aloof while litigation is in progress between the administrator who, as the agent of the estate, had employed him and the estate while in charge of an administrator *pendente lite* unless the circumstances of the case require him to

defend the interests of the estate at the instance and request of the administrator *pendente lite.*

The point I desire to emphasize is, that I decline to indorse the proposition that the attorney for the estate may abandon it and institute and prosecute a suit against the estate for the administrator, for this countenances and permits a practice whereby such attorney may employ information obtained by him while enjoying the confidential relation of counselor for the estate to its detriment in the suit he prosecutes for the administrator.

For the reasons stated, I dissent from so much of the opinion as deals with this matter and believe the item of compensation to the attorney should be denied. Aside from this, I concur in the views of the court expressed as to other questions.